UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANA LEE PRUITT,

　　　　Plaintiff,

v.　　　　　　　　　　　　　　CASE No. 8:12-CV-2232-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

　　　　Defendant.

_____

ORDER

　　　　The plaintiff in this case seeks judicial review of the denial of

her claim for Social Security disability benefits.[2] Because the decision of the

Commissioner of Social Security is supported by substantial evidence and

contains no reversible error, the decision will be affirmed.

I.

　　　　The plaintiff, who was fifty-seven years old at the time her

disability insurance expired and who has a high school education, has worked

_____

　　　　[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue
as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

　　　　[2]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 12).

as a sales clerk and sales associate (Tr. 173). She filed a claim for Social Security disability benefits, alleging that she became disabled due to a number of ailments, including Crohn's disease and arthritis (Tr. 241). The claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge determined that the plaintiff last met the earnings requirements for disability benefits on September 30, 2008 (Tr. 22). She concluded, further, that a prior denial of benefits was *res judicata* for a claim before February 20, 2008 (Tr. 20).

The law judge found that, during the period from February 20, 2008, through September 30, 2008, the plaintiff had severe impairments of a history of Crohn's disease and rheumatoid arthritis (Tr. 22). She concluded that, with these impairments, the plaintiff was limited to a full range of light work (Tr. 26). A vocational expert testified that, despite that limitation, the plaintiff could perform her past relevant work as a sales clerk and as a sales associate (Tr. 30). Accordingly, the law judge decided that the plaintiff was not disabled on, or before, September 30, 2008 (Tr. 31). The Appeals

Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A). In this case, also, the plaintiff must show that she became disabled before her insured status expired on September 30, 2008, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c).

When an impairment is severe, the next inquiry is whether the impairment meets, or equals, a listing in Appendix 1 (step three). 20 C.F.R. 404.1520(d). If it does not, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g).

### III.

The plaintiff challenges the law judge's decision on four grounds: (1) the law judge erred in giving no weight to the opinions of a treating physician and treating psychiatrist; (2) the law judge erred in finding that only two of the plaintiff's alleged impairments were severe and in failing to consider the effects of the other impairments; (3) the law judge erred in denying a request to reopen the denial of a prior application and in giving *res judicata* effect to that denial; and (4) the law judge erred in failing to find the plaintiff not disabled under the medical-vocational guidelines (Doc. 14, pp. 1-2). None of these contentions warrants reversal.

A. It is appropriate to begin with the argument regarding *res judicata* because that conclusion limits the period under review. The law judge pointed out that the plaintiff had filed a previous application for disability benefits in May 2007, and the application was denied initially on October 2, 2007, and upon reconsideration on February 19, 2008 (Tr. 20). With respect to that application, the law judge stated (id.):

> The undersigned denies the claimant's motion to reopen that application and finds that the doctrine of *res judicata* applies through February 19, 2008. Thus, the period at issue in this decision begins on February 20, 2008 and ends on September 30, 2008, the claimant's date last insured. Any discussion of evidence or history that involves this previously adjudicated period is only to offer a background as to these current claims. It should not be construed as an attempt, either implicit or explicit, to reopen and revise the administratively final determination of the Commissioner offered on February 19, 2008.

The plaintiff argues that the law judge could not give *res judicata* effect to the prior determination because the administrative process only went as far as reconsideration and did not proceed to a hearing before a law judge. The plaintiff bases this contention on the following sentence in 42 U.S.C. 405(h):

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.

That sentence, however, was simply part of a provision that was designed to limit judicial review of the Commissioner's decisions. The sentence does not say that a decision of the Commissioner is only binding after a hearing. Thus, it does not render invalid the Commissioner's regulations that make binding initial or reconsidered determinations when the claimant does not proceed to the next step in the administrative process. See 20 C.F.R. 404.905, 404.921. The regulations provide further that a law judge may refuse to consider any issue because "[t]he doctrine of *res judicata* applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. 404.957(c)(1).

The regulations therefore make binding with *res judicata* effect determinations at the initial and reconsideration stage. There is no language in the first sentence of §405(h) that warrants the remarkable conclusion that

those regulations are invalid because they are contrary to the Social Security Act.

Moreover, the Sixth Circuit in <u>Gaston</u> v. <u>Richardson</u>, 451 F.2d 461 (1971), expressly rejected the same argument made by the plaintiff here that *res judicata* does not apply if there was no administrative hearing. Accordingly, an A.L.R. annotation states, "[i]t also appears reasonably settled that final determinations made either at the initial stage or upon reconsideration by the Social Security Administration are sufficient to constitute res judicata even though no hearing is held incident to such proceedings." <u>Annotation,</u> 14 A.L.R. Fed. 776, 780. The plaintiff, on the other hand, cites no authority for her argument that *res judicata* does not apply if no administrative hearing is held.

The law judge appropriately applied *res judicata* to the extent that the plaintiff was claiming disability prior to the date of the reconsideration decision on February 19, 2008. The current application, like the previous one, claims the plaintiff was disabled beginning May 15, 2006. The denial on reconsideration is a binding determination that the plaintiff was

not disabled during the period from May 15, 2006, through February 19, 2008. 20 C.F.R. 404.921.

The plaintiff argues that *res judicata* does not apply because the facts are not the same as those in the prior determination (Doc. 14, p. 17). In this respect, the plaintiff points to the plaintiff's testimony at the hearing and to the opinions of two treating doctors (id., p. 18). That, however, is simply new evidence. It does not establish that the basic facts on the second claim are different from the first application. Both allege disability due to the plaintiff's various ailments beginning May 15, 2006. Moreover, all of the illnesses, injuries or conditions that limit the plaintiff's ability to work that were alleged in connection with the first application were repeated in the second application (Tr. 164, 241). Notably, the plaintiff does not assert that the claims are different. It is not enough to simply submit some new evidence on the same claim in order to avoid *res judicata*. If it were, *res judicata* would almost never apply.

Furthermore, even if in some cases *res judicata* could be avoided by the submission of new evidence, this case is not one of them. The law judge gave no weight to the opinions of the treating doctors, and he gave

adequate and reasonable explanations for those determinations. The law judge also found that the plaintiff's testimony was not credible to the extent it was inconsistent with the finding that the plaintiff could perform a full range of light work (Tr. 27), and the plaintiff has not challenged that credibility finding. Since the new evidence did not result in a finding that the plaintiff was disabled on, or after, February 20, 2008, it is implausible to think that the evidence would result in a disability finding before that date.

For these reasons, the submission of new evidence does not overcome the *res judicata* effect of a prior determination that became binding. Rather, under the administrative scheme, *res judicata* can be avoided by the reopening of the prior binding determination, which, as pertinent here, can be based on the submission of new and material evidence. 20 C.F.R. 404.988(b), 404.989(a)(1).

In this case, the law judge considered the plaintiff's motion to reopen the binding determination on the prior application and expressly denied that request (Tr. 20). Importantly, the Supreme Court has held that the denial of reopening is not subject to judicial review. <u>Califano</u> v. <u>Sanders</u>, 430 U.S. 99 (1977).

Consequently, as the law judge found, the doctrine of *res judicata* applies through February 19, 2008 (Tr. 20). Therefore, the law judge correctly concluded that "the period at issue in this [case] begins on February 20, 2008 and ends on September 30, 2008, the claimant's date last insured" (id.).

B. The plaintiff also contends that the law judge did not give adequate weight to the opinions of Dr. Carmen I. Nan, a treating physician, and Dr. Leo Yason, a treating psychiatrist (Doc. 14, p. 8). The law judge considered those opinions and set forth good cause for giving those opinions no weight.

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Dr. Nan filled out a Physical Residual Functional Capacity Assessment on January 3, 2011, which was more than two years after the plaintiff's date last insured of September 30, 2008 (Tr. 873). Dr. Nan opined that the plaintiff could lift and carry less than ten pounds, could stand less than two hours in an eight-hour workday, needed to alternate sitting and standing, was limited in pushing and pulling (Tr. 867); could never engage in postural activities (Tr. 868); was limited in manipulative tasks (Tr. 869); and had environmental limitations (Tr. 870).

With respect to Dr. Nan's opinion, the law judge stated (Tr. 30):

> Dr. Nan completed a physical residual functional capacity assessment in January 2011. However, he indicated that this assessment concerned the claimant's condition from September 2008 through the date of his evaluation (Exhibit 44F). As such, his opinion concerns the claimant's condition only after the date last insured and therefore has little bearing on this decision. Regardless, the medical evidence of record does not support the level of severity indicated by Dr. Nan's assessment. In that sense, it is wholly inconsistent with the objective medical evidence. Therefore, the undersigned has afforded it no weight.

The plaintiff argues that the law judge erred in stating that the opinion only concerns the plaintiff's condition after her insured status ended

on September 30, 2008. While the law judge could interpret "From 9/08 to present" to mean after September 2008, the normal reading would include that month (Tr. 866). However, the record does not indicate that, in fact, Dr. Nan was opining about September 2008.

In the first place, it appears that the language "From 9/08 to present" was written not by Dr. Nan, but most likely by someone from plaintiff's then-counsel's office, who also wrote in the plaintiff's name and Social Security number (id.; see also Tr. 709). Consequently, Dr. Nan probably did not appreciate that the opinion covered September 2008. This is particularly so since it appears that Dr. Nan did not read the form carefully as reflected by the fact that she made two mistakes on the form that she had to correct (one of which is not even clear after correction) (Tr. 867, 868).

Furthermore, there is no record evidence indicating Dr. Nan saw the plaintiff between February 20, 2008, and September 30, 2008. The first visit after that period was on January 20, 2009. On that date, the plaintiff was seen concerning "meds questions" and the one-page semi-legible note apparently was intended to "clarify" medications (Tr. 603). The plaintiff saw Dr. Nan again on May 28, 2009, seemingly with respect to a problem with

anemia (Tr. 604), a problem which had flared up in April 2009 (Tr. 644).

Significantly, Dr. Nan's notes state that the doctor's office advised the

plaintiff at that time to come in, "but the [plaintiff] stated that she could not

come in as she was going to Hawaii" (id.). Thus, Dr. Nan's notes show that,

as of April 2009 – which was more than six months after the plaintiff's date

last insured of September 30, 2008 – the plaintiff felt well enough to travel

to Hawaii.

Dr. Nan saw the plaintiff several times thereafter. To the extent

that the notes of those visits are even comprehensible, they do not provide

meaningful support for Dr. Nan's opinions. In particular, Dr. Nan's notes do

not set forth any functional limitations.

Also, Dr. Nan purported to support the opinion by referring to

the plaintiff's problems with rheumatoid arthritis, Crohn's disease, and

depression. Significantly, Dr. Nan did not treat the plaintiff for those

conditions. While Dr. Nan also mentions anemia, there was no indication that

the plaintiff suffered from that condition between February 20, 2008, and

September 30, 2008.

Under these circumstances, the law judge could reasonably conclude that Dr. Nan's opinions do not plausibly cover September 2008.

The law judge stated further that she gave Dr. Nan's opinions no weight because "the medical evidence of record does not support the level of severity indicated by [the] assessment" and "is wholly inconsistent with the objective medical evidence" (Tr. 30). As mentioned, Dr. Nan's notes contain no functional limitations. While they do refer to diagnoses of medical conditions, that is not sufficient to establish disability. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

Furthermore, the plaintiff was being treated by other doctors for her rheumatoid arthritis and her Crohn's disease, and those doctors did not set forth any functional limitations. On the other hand, two nonexamining

reviewing physicians opined regarding the plaintiff's functional limitations. One of them concluded that the plaintiff could perform medium level work (Tr. 534-35), and one stated that she could perform light work (Tr. 432-33).

The plaintiff argues that the law judge failed to cite specific examples of how or why Dr. Nan's opinion was inconsistent with the medical evidence of record or how the evidence does not support Dr. Nan's assessment of the level of severity (Doc. 14, p. 10). This criticism is inadequate to demonstrate that the law judge erred in discounting Dr. Nan's opinions. It is the plaintiff's burden to point to specific evidence that shows the law judge erred in concluding that Dr. Nan's opinions were not supported by the medical evidence. Indeed, it was the plaintiff's responsibility under <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, to identify evidence that compels the finding that Dr. Nan's opinions are supported by the evidence. Notably, the scheduling Order requires the plaintiff to support each discrete challenge with "citations to the record of the pertinent facts" (Doc. 11, p. 2). That requirement underscores the inadequacy of the plaintiff's argument that the law judge erred because she did not give specific examples of evidence that did not support Dr. Nan's opinions.

In sum, the law judge showed good cause for giving no weight to Dr. Nan's opinions. Thus, she reasonably concluded that Dr. Nan's opinions did not pertain to the period of February 20, 2008, to September 30, 2008, that is at issue. Further, the plaintiff has not shown that the law judge was incorrect in stating that the medical evidence does not support the level of severity opined by Dr. Nan and that the opinion is wholly inconsistent with the objective medical evidence.

The plaintiff also challenges the law judge's decision to give no weight to the opinion of Dr. Yason, the plaintiff's treating psychiatrist. However, there was ample basis for the law judge to reach that conclusion.

On March 22, 2010, Dr. Yason filled out a Mental Residual Functional Capacity Assessment form (Tr. 709) and a Psychiatric Review Technique form (Tr. 713). In the first form Dr. Yason indicated, among other things, that the plaintiff was markedly limited in the ability to remember locations and work-like procedures, to understand and remember very short and simple instructions, and to carry out very short and simple instructions (Tr. 709). In the second form, he indicated that the plaintiff met the Appendix 1 listing for affective disorders (Tr. 716) and anxiety related

disorders (Tr. 717). He marked further that the plaintiff constantly had

deficiencies of concentration, persistence, or pace, and continually had

episodes of deterioration or decompensation in work or work-like settings

(Tr. 721).

In addition, on December 3, 2010, Dr. Yason stated in a letter

that the plaintiff "is not capable of being engaged in any kind of gainful

employment" (Tr. 875). On December 12, 2010, he assented to a statement

prepared by plaintiff's then-counsel which stated that the limitations set out

in the forms had existed from May 2006 to the present (Tr. 862).

The law judge considered Dr. Yason's opinions and discounted

them. He explained (Tr. 25-26):

> [T]he claimant's treating psychiatrist, Dr. Yason,
> opined in December 2010 that the claimant was not
> capable of being engaged in any kind of gainful
> employment (Exhibit 45F). He also opined that the
> claimant's condition met listings 12.04 and 12.06
> (Exhibit 33F).    Under 20 CFR 404.1527(e),
> opinions regarding administrative findings that are
> dispositive of the case are reserved to the
> Commissioner. Such opinions include whether a
> claimant is disabled, meets or equals a listing, or
> can perform past relevant work, as well as opinions
> regarding a claimant's residual functioning
> capacity. While these opinions cannot be afforded
> significant or controlling weight, they should

nevertheless be evaluated as possible evidence of disability (SSR 06-3p). Here, this assessment is contrary to Dr. Yason's own treatment notes, where he described the claimant as "doing very well ... very stable ... [and] coping effectively" (Exhibits 4F, 8F). Dr. Yason noted in July 2009 that the claimant had more energy, was able to focus "better" when on medication, and denied experiencing any depression. In December 2009, the claimant again denied any depression and added that she had not experienced any anxiety attacks. In addition, Dr. Yason noted that the claimant's sleeping pattern was "stable" (Exhibit 23F). Therefore, despite Dr. Yason's treating relationship with the claimant, the undersigned finds that his opinion is contrary to his own treatment notes, as well as the record as a whole. Accordingly, the undersigned has afforded his opinion no weight.

Although the plaintiff asserts otherwise, my review of Dr. Yason's treatment notes confirm, as the law judge indicated, that they do not support the extreme and disabling limitations opined by Dr. Yason. Significantly, the notes reflect that the plaintiff saw Dr. Yason for medication management. On two occasions, once on June 28, 2010, and once on December 3, 2010, the notes stated "Minimal psychotherapy rendered" (Tr. 828, 859). It is inconceivable, for example, if the plaintiff was in such distress that she was continually suffering episodes of deterioration or

decompensation that she was only given minimal psychotherapy on two occasions in 2010. The same is true with respect to the opinions that the plaintiff was constantly having deficiencies of concentration, or was markedly limited in the ability to understand and remember very short and simple instructions. The law judge is correct that Dr. Yason's notes contradict those opinions.

Significantly, the note of March 18, 2010, which was just a few days before Dr. Yason filled out the forms, stated that the plaintiff had just returned from a trip to Michigan to visit her daughter (Tr. 829). That trip, like the trip to Hawaii, seems inconsistent with disabling mental limitations. The trip to Michigan also undercuts the physical limitations opined by Dr. Nan.

Notably, three nonexamining, reviewing psychologists each opined that the plaintiff did not even have a severe mental impairment (Tr. 418, 515, 622). Those opinions further support the law judge's decision to give no weight to Dr. Yason's opinions.

C. The plaintiff argues further that the law judge failed to consider the combined effect of all the plaintiff's impairments on her ability to work (Doc. 14, pp. 12-13). On this issue, the plaintiff points to thirteen

alleged ailments, in addition to her rheumatoid arthritis and Crohn's disease. The plaintiff, however, did not testify to all of those conditions. Regardless, the plaintiff has not identified any functional limitation that the law judge should have included in the residual functional capacity, but did not.

The plaintiff cannot prevail on this issue simply by arguing that some of the alleged impairments should have been characterized as severe. The law judge found that the plaintiff had severe impairments of history of Crohn's disease and rheumatoid arthritis (Tr. 22). The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

Consequently, in order to demonstrate reversible error based upon a mistake regarding the severity some other impairment, the plaintiff must show that she had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual

functional capacity. As indicated, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, supra.

In this case, the law judge acknowledged the numerous complaints that the plaintiff had asserted (Tr. 22-23). Moreover, she went through them and stated why they were not severe impairments (Tr. 23-24). The plaintiff does not develop an argument that any of the thirteen constitute severe impairments.

The plaintiff, rather, contends that the law judge did not consider the combined effects of the other impairments. The law judge, however, expressly recognized that, in determining the plaintiff's residual functional capacity, she "must consider all of the claimant's impairments, including impairments that are not severe" (Tr. 22). There is no basis for thinking that the law judge did not do that.

In order to show that the law judge did not consider the combined effects of all the plaintiff's impairments, the plaintiff must establish that there were some effects that were not taken into account. In other words,

the plaintiff must demonstrate that she had functional limitations that should have been included in her residual functional capacity, but were not. The plaintiff, however, has not even identified any missing functional limitations, much less cited to evidence in the record which would compel a finding of such limitations. Consequently, this contention fails.

D. The plaintiff's final argument is that the plaintiff should have been found limited to sedentary work, so that under the medical-vocational guidelines she would be deemed to be disabled (Doc. 14, p. 20). This contention is based upon Dr. Nan's assessment of the plaintiff's limitations (id.). However, as previously explained, the law judge gave that assessment no weight, and the law judge's finding was reasonable and adequately explained. Consequently, this contention also fails.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this

Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 7ᵗʰ day of

October, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE